Kurt A. Gorman, Plaintiff-Appellant,
v.
John P. Dahlberg and Allstate Insurance Company, Defendants-Respondents.
No. 04-1233.
Court of Appeals of Wisconsin.
Opinion Filed: December 8, 2004.
Before Brown, Nettesheim and Snyder, JJ.
¶1 NETTESHEIM, J.
Kurt A. Gorman appeals from a judgment dismissing his complaint sounding in negligence against John Dahlberg. The judgment followed a jury verdict finding that Dahlberg's negligence was not causal. The issue on appeal is whether the circuit court properly found excusable neglect to allow Dahlberg to file a tardy answer to Gorman's complaint. We conclude the circuit court did not misuse its discretion in accepting the answer. We affirm the judgment.

BACKGROUND
¶2 The relevant facts are not in dispute. On March 4, 2003, Gorman filed a complaint alleging that he had been injured as a result of Dahlberg's negligent operation of a motor vehicle.[1]
¶3 In response, Dahlberg retained Michael Jensen, an Illinois attorney. On April 21, 2003, within the forty-five day limit for filing an answer,[2] Jensen signed and filed a proposed answer together with an affidavit asking leave of the circuit court to appear pro hac vice.[3] However, Jensen's request was not accompanied by the requisite sponsorship or participation of a duly licensed Wisconsin attorney as required by SCR 10.03(4).[4] Nonetheless, the circuit court improvidently entered an order granting Jensen's request and accepting Dahlberg's answer.
¶4 On June 19, 2003, after the expiration of the forty-five day deadline for filing a proper answer, Gorman moved to strike Dahlberg's answer and for default judgment. Dahlberg responded with a motion to enlarge the time to file an answer and tendered the proposed answer with his motion.[5] Both the motion and the proposed answer were signed by Jensen and Eugene J. Brookhouse, a licensed Wisconsin attorney.
¶5 The motion for enlargement of the time to file the answer was supported by an affidavit from Dorothy Pratt, a legal secretary in Jensen's office. This affidavit explained that Pratt had called the Racine county clerk of court's office on March 26, 2003, seeking information as to what steps Jensen needed to take in order to appear and file an answer on Dahlberg's behalf. The clerk's representative inquired as to the judge assigned to the matter. Pratt responded that the matter was assigned to Judge Charles Constantine. The clerk's representative stated that Judge Constantine's clerk was "right here next to me, hold on I'll ask her." Pratt then heard the clerk's representative ask Judge Constantine's clerk "the same questions, which I had just asked her." Pratt next heard the judge's clerk respond that Jensen should
prepare your Appearance and Answer for filing. Also prepare an Affidavit stating that your attorney is licensed and in good standing with the State of Illinois. Make sure you have his Illinois State Bar Number on the affidavit. You should also prepare an Order for Judge Constantine to sign stating that you would like to file your Appearance, Answer and Affidavit pro hac vice.

The clerk's representative then relayed this same information directly to Pratt. In addition, the clerk's representative stated that Judge Constantine "will sign the Order allowing Mr. Jensen to proceed as attorney pro hac vice.
¶6 On August 14, 2003, the circuit court conducted a hearing on the parties' competing motions. The court ruled that Dahlberg had demonstrated excusable neglect. In particular, the court stated that Jensen was justified in relying on the court's order allowing him to represent Dahlberg pro hac vice. Therefore, the court granted Dahlberg's enlargement of time motion, accepted Dahlberg's proposed answer, and denied Gorman's motion for default judgment.
¶7 The matter then went to trial. The jury returned a verdict finding that Dahlberg was negligent, but that his negligence was not causal. Gorman appeals.

DISCUSSION
¶8 We begin our discussion by stating what is not in dispute. Dahlberg concedes that the circuit court's initial order allowing Jensen to appear pro hac vice on his behalf was of no legal effect because Jensen had not appeared "in association with an active member of the state bar of Wisconsin" pursuant to SCR 10.03(4). Thus, Dahlberg further concedes, as he must, that his initial answer bearing Jensen's signature was also of no legal effect, that he therefore stood in default for failing to timely answer Gorman's complaint within the requisite fortyfive day time limit, and that he was neglectful in that failing.
¶9 Thus, the question on appeal narrows to whether the circuit court properly determined that Jensen's neglect was excusable. On this question, Gorman raises two arguments. First, he contends that Dahlberg's improperly subscribed answer deprived the circuit court of jurisdiction to enter the order granting Jensen pro hac vice status, and therefore the court erred in relying on the order when finding excusable neglect. Second, Gorman argues the law does not permit a finding of excusable neglect to rest solely on a mistake of law.
¶10 In Connor v. Connor 2001 WI 49, 243 Wis. 2d 279, 627 N.W.2d 182, our supreme court summed up the law of excusable neglect. We recite it in some detail:
Excusable neglect is not the same as neglect, carelessness or inattentiveness. Instead, it is that neglect which might have been the act of a reasonably prudent person under the same circumstances. In the context of an untimely answer, reasonable grounds for noncompliance with the statutory period constitutes excusable neglect.
A circuit court has great discretion in granting relief based on excusable neglect. In exercising this discretion, the court must consider whether the interests of justice would be served in its finding. The interests of justice require the court to be aware that a failure to find excusable neglect could result in a default judgment and that the law generally disfavors default judgments and prefers a trial on the merits. The court should also balance other competing interests of a default judgment, such as promoting prompt adjudication and encouraging quality legal representation.
We will not disturb a circuit court's decision regarding excusable neglect unless an erroneous exercise of discretion is clearly shown. An erroneous exercise of discretion will result if the record indicates that the circuit court failed to exercise its discretion, if the facts of record fail to support the circuit court's decision, or if this court's review of the record indicates that the circuit court applied the wrong legal standard.... If the circuit court enumerates its reasons for finding excusable neglect, we will focus on the facts of record to determine whether they support the court's reasons.
Id., ¶¶16-18 (emphasis added; citations omitted).[6] With these principles in mind, we turn to Gorman's arguments.

1. Jurisdiction
¶11 As we have noted, in finding excusable neglect and thereby granting Dahlberg's motion for an enlargement of time, the circuit court relied principally on the court's prior order allowing Jensen to proceed pro hac vice. The court reasoned that Jensen reasonably relied on the order, even though it was of no legal effect. Gorman argues that the court's reliance on this fact was error. He contends that the court was without jurisdiction to enter the order because Jensen had not properly qualified to appear pro hac vice and therefore the initial answer bearing his signature was of no legal effect. Since the order allowing Jensen was to appear pro hac vice was of no legal effect, Gorman reasons that the court could not rely on it when assessing the question of excusable neglect.
¶12 In support, Gorman relies on Schaefer v. Riegelman, 2002 WI 18, 250 Wis. 2d 494, 639 N.W.2d 715. There, an attorney not licensed to practice law in Wisconsin signed a complaint without first complying with the requirements of SCR 10.03(4). Schaefer, 250 Wis. 2d 494, ¶8. The supreme court held that this was an incurable fundamental defect in the pleading which deprived the circuit court of jurisdiction over the defendant. Id., ¶38.
¶13 We disagree with Gorman that Schaefer governs this case. In Schaefer, the circuit court's jurisdiction depended on the validity of the plaintiff's complaint. Given the fundamental and incurable defect because of the defective subscription to the complaint, the supreme court understandably concluded that the circuit court was without jurisdiction. But here, the circuit court already had jurisdiction via Gorman's complaint which did not suffer from any jurisdictional defects. Thus, the defect in Dahlberg's answer to that complaint did not serve to undo that jurisdiction. See State v. Asfoor, 75 Wis. 2d 411, 424, 249 N.W.2d 529 (1977) ("As a general rule the jurisdiction of a court depends on the state of facts existing at the time it is invoked, and once jurisdiction of the person and subject matter attaches it continues until final disposition or determination of the case in the mode prescribed by law."[7] (Emphasis added.)).
¶14 Gorman's argument also suggests that when a circuit court is originally vested with proper jurisdiction, the court loses that jurisdiction for certain purposes but retains it for others. Thus, Gorman argues that the circuit court was without jurisdiction to address Dahlberg's motion to enlarge the time for an answer, but, in the same breath, he argues that the court should have granted his motion for default judgment, a tacit concession that the court had jurisdiction. We know of no law, and Gorman cites to none, for such an "on again, off again" approach to jurisdiction. Instead, as we have noted, a court vested with proper jurisdiction cannot be thereafter divested of that jurisdiction. Id.

2. Mistake of Law
¶15 Gorman next argues that the circuit court based its excusable neglect finding on Jensen's mistaken understanding as to the requirements of SCR 10.03(4). Jensen argues that this was error, contending that excusable neglect cannot be premised solely on a neglectful party's mistake of law. We quote Gorman's argument exactly as he states it and exactly as he depicts it in his briefin-chief: "Further, it has long been the law of this state that a mistake of law is not excusable neglect!" In support of this statement, Gorman cites to State v. Elliott, 203 Wis. 2d 95, 107, 551 N.W.2d 850 (Ct. App. 1996). However, the actual statement of the Elliott court is as follows: "Mere mistake of law alone is not excusable neglect."[8]Id. (emphasis added).
¶16 In this case, Jensen was clearly operating under a mistake of law when he relied on the incorrect advice of the clerk of court's representative as to how he could obtain pro hac vice status authorizing him to appear on Dahlberg's behalf. Were the facts limited to that and nothing more, Gorman might have an arguable case for reversal of the circuit court's excusable neglect ruling. But this case has something morethe circuit court's ensuing order, albeit improvident, allowing Jensen to appear pro hac vice on Dahlberg's behalf. As noted, the circuit court found this to be a critical factor in excusing Jensen's mistake. Thus, the court's excusable neglect finding did not rest solely on Jensen's mistake of law and therefore did not run afoul of Elliott.

3. Excusable Neglect
¶17 Beyond the two issues we have already discussed, Gorman does not otherwise challenge the circuit court's finding of excusable neglect. Nonetheless, we briefly address the court's ruling in the interests of completeness.
¶18 During the hearing on the parties' competing motions, the circuit court candidly acknowledged that its execution of the order allowing Jensen to appear pro hac vice was error. Therefore the court correctly held that Dahlberg's initial answer was of no legal effect since it was improperly subscribed by a foreign attorney who had not first acquired pro hac vice status. The court described Jensen's conduct as "neglect," but added that it was so "by a thin margin." The court's "thin margin" assessment was premised upon Jensen's contact with the clerk of court to learn how he could attain pro hac vice status, his reliance on and compliance with that information, and, most importantly, his reliance on the court's order allowing him to appear pro hac vice for Dahlberg. While the court chastised Jensen for relying on advice from the clerk of court instead of performing his own research on the question, the court concluded that Jensen "at the very least" could rely on the court's execution of the order allowing him to proceed pro hac vice. As such, the court concluded that Jensen had demonstrated excusable neglect.[9]
¶19 As the circuit court aptly noted, the question is not whether Jensen was guilty of neglect. He clearly was. Rather the question is whether that neglect was excusable. The court's decision reflects an examination of the relevant facts, an application of the correct legal standards, and a reasoned application of those facts to that law resulting in a conclusion that a reasonable judge could reach. Loy v. Bunderson, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982). Bearing in mind that a circuit court has great discretion on the question of excusable neglect, we uphold the court's discretionary ruling.[10]

CONCLUSION
¶20 We hold that the circuit court did not lose jurisdiction as a result of Dahlberg's initial defective answer. Therefore, the court properly relied on its issuance of the improvident order allowing Jensen to appear pro hac vice when addressing the question of excusable neglect. In addition, the court's excusable neglect finding was not premised solely on Jensen's mistake of law. Finally, we hold that the circuit court did not misuse its discretion when finding excusable neglect. We affirm the judgment dismissing Gorman's complaint.
By the Court.  Judgment affirmed.
NOTES
[1] Gorman was a passenger in the vehicle operated by Dahlberg.
[2] See WIS. STAT. § 802.06(1).
[3] Pro hac vice refers to a lawyer who has not been admitted to practice in a particular jurisdiction but who is admitted there temporarily for the purpose of conducting a particular case. BLACK'S LAW DICTIONARY 1248 (8th ed. 2004).
[4] SCR 10.03(4) provides, in relevant part: "A judge in this state may allow a nonresident counsel to appear in his or her court and participate in a particular action or proceeding in association with an active member of the state bar of Wisconsin who appears and participates in the action or proceeding.
[5] WISCONSIN STAT. § 801.15(2).
[6] We also observe that the question of whether to grant a default judgment is likewise committed to the circuit court's discretion. Shirk v. Bowling, Inc., 2001 WI 36, ¶9, 242 Wis. 2d 153, 624 N.W.2d 375.
[7] For the same reason, we reject Gorman's reliance on Brown v. MR Group, LLC, 2004 WI App 122, ___ Wis. 2d ___, 683 N.W.2d 481, in support of his jurisdictional argument. In Brown, the court of appeals held that an improperly subscribed notice of appeal did not vest the court of appeals with jurisdiction. Id., ¶1. Thus, just as a complaint measures the circuit court's original jurisdiction, the notice of appeal measures the court of appeals' original jurisdiction. Both pleadings trigger the respective courts' original jurisdiction. As State v. Asfoor, 75 Wis. 2d 411, 424, 249 N.W.2d 529 (1977), teaches, the general rule is that such jurisdiction endures until final disposition.

We are not called upon in this case to decide whether this general rule applies to counterclaims, cross-complaints, or third-party complaints on the circuit court level or to crossappeals on the court of appeals level.
[8] Gorman repeats this misrepresentation in his reply brief when he purports to quote directly from State v. Elliott, 203 Wis. 2d 95, 551 N.W.2d 850 (Ct. App. 1996): "mistakes of law are not excusable neglect." The quoted phrase does not appear at the page cited by Gorman. In fact, the phrase does not appear anywhere in Elliott.
[9] In granting relief to Dahlberg, the circuit court ordered Jensen to pay Gorman's attorney $750 as a sanction.
[10] As a further ground for affirming the circuit court's ruling, Dahlberg argues that his second answer qualified under WIS. STAT. § 802.05(1)(a) which provides, in part: "If a pleading, motion or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant." Dahlberg argues that this statute serves to salvage his original answer because he promptly corrected the defect once he learned of it. We question the application of this statute to the facts of this case since Dahlberg's original answer was signed, not unsigned. Moreover, we question whether this statute applies to a tardy answer. However, we need not address this alternative argument since we have rejected Gorman's challenges to the circuit court's finding of excusable neglect.